

321 West 44th Street
Suite 1000
New York, NY 10036
(212) 850-6100 | Phone
(212) 850-6299 | Fax

Robert Penchina
(212) 850-6109
rpenchina@lskslaw.com

August 18, 2017

**VIA ECF**

The Hon. Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse, Room 2204
40 Foley Square
New York, New York 10007

    Re:    *Ferdman v. CBS Interactive Inc.* No. 17-cv-01317 (PGG)

Dear Judge Gardephe:

    We are counsel for Defendant CBS Interactive Inc. ( "CBSI" or "Gamespot") in the above-captioned civil action.

    We write pursuant to Rule IV(A) of this Court's Individual Rules of Practice in Civil Cases to request a pre-motion conference in connection with CBSI's intention to move for summary judgment. CBSI intends to move for summary judgment on two issues. First, CBSI will seek a judgment dismissing plaintiff's claim of copyright infringement arising in connection with the article entitled "New Spider-Man: Homecoming Photo Shows Tom Holland Suited Up" on the ground that this article made fair use of plaintiff Steven Ferdman's photo. Second, CBSI will seek a ruling that, to the extent there was any infringement of plaintiff's photos by CBSI, that infringement was not willful as a matter of law and thus plaintiff therefore may not obtain statutory damages for willful infringement.

## Background

    CBSI publishes the website Gamespot, accessible at gamespot.com, which is an internet publication devoted to video games and entertainment. On September 27, 2016, Gamespot published an article about the movie Spider-Man: Homecoming, which at the time was being filmed in the streets of Queens, New York. Gamespot's article, entitled New Spider-Man: Homecoming Photo Shows Tom Holland Suited Up, reported that "[f]ilming on the 2017 movie has moved from Atlanta to New York," and discussed that, with the movie "now in production, images and videos from the set have steadily emerged." The report focused specifically on a "shot [that] comes from Spider-Man actor Tom Holland himself." Holland posted this image to



his own Instagram page.  Gamespot commented that "the image celebrates the fact that shooting has shifted to Queens, which is [Spider-Man character] Peter Parker's hometown," and recounts how Tom Holland introduced the photo on Instagram: "First night in Queens and it feels like home already."  Gamespot's report included a screenshot of the photo it made from Holland's Instagram page.

Unbeknownst to Gamespot, the photo made available by Tom Holland was created by plaintiff.  The photo bore no copyright notice, no watermarks, and had no restrictions or limitations.  Rather, it was posted by the star of the movie in the same manner that studio publicity photos generally are made available for further distribution by the media.

On September 29, 2016, Gamespot ran a different report covering the making of the Spider-Man movie, this one entitled Latest Spider-Man: Homecoming Images Showcase Action on New York's Streets.  This second article reported about the movie's production in New York, and about images and videos relating to the movie that had been released by the studio.  The article also included a slide show of on-set images which Gamespot believed to be publicity photos released by the studio.

## Grounds For Summary Judgment

I.   <u>Fair Use</u>

The uncontroverted evidence in this case demonstrates that Gamespot's September 27 article made fair use of the Holland image as a matter of law.  The Copyright Act specifies four non-exclusive factors that must be considered to determine whether a particular use is fair: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original.  17 U.S.C. § 107.  Each of the factors weighs in favor of fair use.

"News reporting" and "comment" are favored uses under the Copyright Act, specifically identified as likely fair use.  *See* 17 U.S.C. § 107.  The Second Circuit has repeatedly held that where a defendant's use is one of the uses identified in § 107, there will be a "strong presumption that factor one favors the defendant."  *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991).  Here, it is undisputed that Gamespot's article was a use for news reporting and comment.

The second factor in the fair use analysis is the nature of the copyrighted work.  Courts consider "(1) whether the work is expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."  *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006).  Here, plaintiff's work was a previously published newsphoto—weighing this factor in favor of fair use.  *See, e.g., Katz v. Chevaldina*, No. 12-22211-CIV, 2014 WL 2815496, at *1, *8 (S.D. Fla. June 17, 2014)



The Hon. Paul G. Gardephe
August 18, 2017
Page 3

(where the work at issue was a candid picture of a man at basketball practice and there was "no evidence that the photographer influenced, at all, the [subjects] activity, pose, expression or clothing" and the photograph conveyed no creative ideas, this factor weighed in favor of fair use).

As to the third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107, a court should consider not just the quantity used, but "whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Cariou v. Prince*, 714 F.3d 694, 710 (2d Cir. 2013) (quoting *Blanch*, 467 F.3d at 257). With respect to photographs and similar visual works, even the copying of an entire work "does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives v. Dorling Kindersely Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006). Here Gamespot used no more than was necessary for its proper purpose.

The fourth factor requires courts to consider "the effect of the use upon the potential market for or value of the copyrighted work." *See* 17 U.S.C. § 107(4). Here, plaintiff's own testimony makes clear that Gamespot's use caused no harm whatsoever to his market for the photo. Plaintiff testified at his deposition that he lost *no* sales as a result of Gamespot's publication. To the contrary, he testified that his primary market for the photo was *after* the movie came out—not at the time that Gamespot published the photo while the movie was in production. As plaintiff explained during his deposition, Gamespot's use was "before the movie came out. Since the movie came out, there was a lot more news and there was a lot more demand for Tom Holland photos." Plaintiff testified that he has sold "hundreds of licenses" since the movie came out. Indeed, plaintiff confirmed that, notwithstanding Gamespot's use, "I do expect these photos to sell for the rest of my life." Thus, the evidence demonstrates no harm to the market for plaintiff's original work.

In sum, the undisputed evidence demonstrates that all of the fair use factors factors weigh in favor of fair use.

II.   Any Infringement By Gamespot Was Not Willful

Plaintiff claims to be entitled to enhanced statutory damages for willful infringement in the event he can demonstrate liability. However, the record is devoid of any evidence capable of showing willfulness. In order to demonstrate willfulness, a plaintiff must prove that the infringer had "actual or constructive knowledge" that its actions constituted infringement at the time the acts occurred. *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986). Moreover, a person "who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (quoting 3 Melvin B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.04[B][3] (1996)); *Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1364 (S.D.N.Y. 1991)



The Hon. Paul G. Gardephe<br>
August 18, 2017<br>
Page 4

("One defense to an allegation of willfulness is the defendant's reasonable and good faith belief that its actions do not constitute copyright infringement. Thus, even if defendant continues to infringe after having been notified of its allegedly illegal actions, the infringement is not necessarily intentional.").

Here, the uncontroverted testimony shows that in the entertainment industry, movie studios, stars, publicists and other people connected to entertainment properties routinely make publicity photos available for media use by posting those photos on Instagram, Twitter and other social media sites. Gamespot obtained the photos at issue from Spider-Man star Tom Holland's Instagram page and other social media sources believed by Gamespot to be distributing studio publicity photos. Gamespot's unchallenged testimony is that Gamespot had a good faith belief that it was entitled to publish the photos at issue. Plaintiff has come forward with no evidence to show that, at the time it published the photos, Gamespot knew that doing so amounted to infringement. Thus, Gamespot is entitled to a ruling that, to the extent it committed any infringement, that infringement was not willful.

Very truly yours,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By: _____
Robert Penchina

*Counsel for Defendant CBS Interactive Inc.*

cc:   All counsel of record (via ECF)