UNITED STATES DISTRICTCOURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN FERDMAN,

               Plaintiff,

- against -

CBS INTERACTIVE INC.,

               Defendant.

1:17 Civ. 1317(PGG)

**PLAINTIFF'S COUNTER RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56.1 of the Local Rules for the United States District Court for the Southern District of New York, Plaintiff Steven Ferdman ("Ferdman") hereby submits the following Counter Rule 56.1 Statement of Undisputed Material Facts:

1. The movie *Spider-Man: Homecoming* (the "Movie") was in production in 2016. Declaration of Edward Makuch ("Mackuch Decl.") ¶ 3; Declaration of Robert Penchina ("Penchina Decl."), Ex. 1 at 67:8-68:5.

Plaintiff's Response: Not Contested.

2. In September 2016, the production of the Movie moved to New York, and scenes of the movie were being filmed openly in the streets of Queens. Makuch Decl., ¶ 3; Penchina Decl., Ex. 1 at 67:8-68:5.

Plaintiff's Response: Disputed. Ferdman objects that this statement is not material to Defendant's summary judgment motion.

3. Plaintiff Steven Ferdman snapped 307 photos of the Movie's production, which he observed from public locations when the Movie was being shot in Queens. Penchina Decl., Ex. 1 at 40:8-13, 44:7-8, 67:8-68:5; *Id*., Ex. 4.

1

Plaintiff's Response: Not Contested.

4. Rex Shutterstock is one of Mr. Ferdman's agents for licensing of his photos. Penchina Decl., Ex. 1 at 12:2-13:12, 16:18-22, 81:25-82:3.

Plaintiff's Response: Not Contested.

5. Pursuant to an agency agreement between Mr. Ferdman's and Rex Shutterstock, Mr. Ferdman is and was entitled to receive 50% of the license fees generated by Rex Shutterstock in connection with the sale or license of photos created by Mr. Ferdman. Penchina Decl. Ex. 1 at 53:10-54:15, 70:24-71:9, 76:18-24; *Id.*, Ex. 5.

Plaintiff's Response: Not Contested.

6. Mr. Ferdman provided all of his photos of the Spider-Man production to Rex Shutterstock and not to any other of his agents. Penchina Decl., Ex. 1 at 23:2-5, 81:25-82:16.

Plaintiff's Response: Not Contested.

7. From the time Mr. Ferdman created his 307 Spider-Man photos up until the filing of this case, Rex Shutterstock sold a total of 27 licenses for Mr. Ferdman's Spider-Man photos, for which Rex Shutterstock generated combined total license fees of just 218.47 English pounds—approximately $292. Penchina Decl., Ex. 5.

Plaintiff's Response: Not Contested.

8. Among other licenses issued by it, Rex Shutterstock licensed some of Mr. Ferdman's Spider-Man photos for publication in China for fees as low as £0.63, of which Mr. Ferdman's share was £0.32. Penchina Decl., Ex. 5 at 1; *Id.*, Ex. 1 at 79:24-80:10.

Plaintiff's Response: Disputed as not material to the Defendant's summary judgment motion.

9. Persons associated with the production of movies frequently seek publicity for their upcoming release of the movie by circulating photos from the set of the production. Makuch Decl. ¶ 5; Penchina Decl., Ex. 3 at 105:5-9; *Id.*, Ex. 2 at 89:15-19.

Plaintiff's Response: Disputed. The fact that some phenomenon occurs frequently or infrequently is not a material fact for the Defendant's motion for summary judgment. No admissible evidence has been proffered that anyone associate with this particular production sought publicity by circulating photos from the set.

10. Although once upon a time photos of movie productions were physically handed out by publicity agents seeking to gain press coverage for their movies, the modern practice is for movie studios, actors, and others associated with a production to post photos to their social media accounts such as Instagram, Facebook and Twitter. Penchina Decl., Ex. 2 at 48:15-19, 89:15-90:6; *Id.*, Ex. 3 at 105:5-9, 108:18-109:3.

Plaintiff's Response: Disputed. Any speculation as to the change in business practices between publicity agents and the press is not only immaterial to the Defendant's motion for summary judgment but also conclusory. Defendant support this statement with further speculation from non-expert witnesses on the evolving best practices for publicity agents.

11. Daniel Auty and Edward Makuch, the authors of the GameSpot articles challenged in this case, understood that when a studio or star posts photos taken on a set, they do so to get the word out about their movies, and, so long as the images do not bare any copyright notices or restrictions on reuse, the photos are available and intended for the media to republish in connection with reporting about the movies. Makuch Decl. ¶¶ 5, 6; Declaration of Dan Auty ("Auty Decl.") ¶¶ 5, 6; Penchina Decl., Ex. 2 at 48:15-19, 52:20-22, 89:15-90:16, 120:18-121:13; *Id.*, Ex. 3 at 68:10-70:2, 105:5-9, 108:18-109:3.

Plaintiff's Response: Disputed. This statement mischaracterizes the witness testimony.

12. While the Movie was in production, Tom Holland, the star of the Movie, publicized the Movie by periodically making posts about the production to his Instagram page. Penchina Decl., Ex. 1 at 86:15-25; Makuch Decl., Ex. B.

Plaintiff's Response: Disputed. There is no evidence presented as to Tom Holland's intent to publicize the movie and no evidence that the account is in fact, run by Tom Holland. As deposition testimony shows, the Defendant did not check and had no reason to believe that the Instagram page was run by Tom Holland and was operated by a fan or another entity altogether.

13. On September 27, 2016, when the production moved to New York, Holland made a post on Instagram stating "First night in queens and it feels like home already," and he included a photo of himself in his Spider-Man costume (the "Photo"). Makuch Decl., Ex. B.

Plaintiff's Response: Disputed. Plaintiff repeats the response to No. 12 as to the authenticity of the Instagram account but does not contest its content.

14. The Photo bore no indicia that it was anything other than a publicity photo; it had no copyright notice, no watermarks, and had no stated restrictions or limitations on its use. Makuch Decl., Ex. B; Penchina Decl., Ex. 1 at 87:4-88:3.

Plaintiff's Response: Disputed. This statement speculates as to the characteristics of a publicity photo vs. a non-publicity photo. The elements listed have not been presented by an expert witness and are arbitrary.

15. Although Mr. Ferdman was aware from the outset that the Photo Tom Holland posted to his Instagram account was taken by Mr. Ferdman, Mr. Ferdman never sent a takedown notice or otherwise asked that the Photo be removed, or that credit and restrictions be added. Penchina Decl., Ex. 1 at 88:16-89:5; *Id.*, Ex. 6.

Plaintiff's Response: Not Contested.

16. Many other photos and videos from the set of the-Movie were posted to social media sites during the course of the Movie's production. Auty Decl. ¶ 3.

Plaintiff's Response: Disputed. This statement is neither material to the Defendant's motion for summary judgment, nor substantiated by any admissible evidence. It is difficult to ascertain what "many" means in this context.

17. Among the photos of the Movie set that were circulating on social media during production of the Movie were seven more of photos created by Mr. Ferdman (the "Additional Photos"), and these Additional Photos were posted to and available on Twitter. Auty Decl., Ex. 3; Penchina Decl., Ex. 3 at 102:15-103:13.

Plaintiff's Response: Disputed as immaterial to the Defendant's summary judgment motion. There is no admissible evidence of the Additional Photos being posted and available on Twitter.

18. The Additional Photos circulated in social media without copyright notices, watermarks or any other indicia of ownership or restrictions on their use. Auty Decl. ¶ 4.

Plaintiff's Response: Disputed as immaterial to the Defendant's summary judgment motion. There is no admissible evidence of the Additional Photos as having no indicia of ownership. Any image posted on Twitter at least has an indicia of ownership of the user in the form of a Twitter handle.

19. Mr. Ferdman never sent takedown notices or otherwise acted to have the Additional Photos removed from Instagram. Penchina Decl., Ex. 1 at 88:16-89:5.

Plaintiff's Response: Disputed. In *Ferdman v. Columbia Pictures Industries, Inc. et. al*, 1:17-cv-01816-JSR, Plaintiff sued the movie production company for its Instagram post of a photograph from the Spiderman set.

20. CBSI publishes GameSpot, an internet publication accessible at www.gamespot.com that provides news and commentary about video games and entertainment of interest to video game players. Compl. ¶ 6; Penchina Decl., Ex. 3 at 54:17-55:11.

Plaintiff's Response: Not Contested.

21. GameSpot routinely covers the production of new video games, television shows and movies. Penchina Decl., Ex. 3 at 54:17-55:11.

Plaintiff's Response: Not Contested.

22. GameSpot's articles about games, shows or movies often are accompanied by photos. Penchina Decl., Ex. 3 at 56:5-8.

Plaintiff's Response: Not Contested.

23. People involved in the in the production of games, shows and movies are a source for photos about their productions because they typically are seeking news coverage to publicize their works. Penchina Decl., Ex. 3 at 60:19-21, 66:14-67:25.

Plaintiff's Response: Disputed to the extent that the statement is a generalization about the intent of people involved in production and is not supported by evidence from an expert witness or anyone in production.

24. On September 27, 2016, GameSpot published an article about Movie, entitled "New Spider-Man: Homecoming Photo Shows Tom Holland Suited Up" (the "First Article"). Makuch Decl. ¶ 2 & Ex. A.

Plaintiff's Response: Not Contested.

25. The First Article reported that "[f]ilming on the 2017 movie has moved from Atlanta to New York," and discussed that, with the Movie "now in production, images and videos from the set have steadily emerged." Makuch Decl., Ex. A at 1.

Plaintiff's Response: Not Contested.

26. The First Article focused specifically on a "shot [that] comes from Spider-Man actor Tom Holland himself," and explicitly discussed that Holland posted this image to his own Instagram page. Makuch Decl., Ex. A.

Plaintiff's Response: Not Contested.

27. The First Article included a copy of the photo that Holland posted to his Instagram page and commented that "the image celebrates the fact that shooting has shifted to Queens, which is [Spider-Man character] Peter Parker's hometown." Makuch Decl., Ex. A at 1; Penchina Decl., Ex. 2 at 67:8-22; Complaint Ex. B at 9.

Plaintiff's Response: Not Contested.

28. The First Article also recounted how Tom Holland himself introduced the posted Photo on Instagram: "First night in Queens and it feels like home already." Makuch Decl., Ex. A at 1.

Response: Not Contested.

29. On September 29, 2016, GameSpot ran a report covering the making of the Movie, entitled "Latest Spider-Man: Homecoming Images Showcase Action on New York's Streets" (the "Second Article"). Auty Decl., ¶ 2 & Ex. A.

Plaintiff's Response: Not Contested.

30. The Second Article reported about the Movie's production in New York. Auty Decl., Ex. A.

Plaintiff's Response: Not Contested.

31. The Second Article discussed that images of the production of the Movie were in circulation, and reported on the "steady stream of on-set images and videos" that had been released by the studio. Auty Decl., Ex. A at 1.

7

Plaintiff's Response: Not Contested.

32. The Second Article observed that, not only was there the "picture posted by star Tom Holland earlier this week"—*i.e*, the Photo included in the First Article—but that "director Jon Watts … also posted a silly video of Holland," and that "[p]ictures of some scary-looking helicopter stunts … were revealed earlier this month." Auty Decl., Ex. A at 1.

Plaintiff's Response: Not Contested.

33. The Second Article included a photo "gallery at the end of this story" which included photos believed by GameSpot to have been released by the studio or otherwise available for use by the media. Auty Decl., Ex. A at 2; Penchina Decl., Ex. 3 at 103:10-13.

Plaintiff's Response: Not Contested.

34. GameSpot obtained the photos accompanying the Second Article from a Twitter account believed by GameSpot to be circulating studio publicity shots. Auty Decl. ¶¶ 3-5; Penchina Decl., Ex. 3 at 103:10-13.

Plaintiff's Response: Not Contested.

35. Although they bore no indicia indicating that they were anything other than studio publicity shots, seven of the photos in the gallery turned out to have been the Additional Photos created by Mr. Ferdman. Auty Decl. ¶ 3.

Plaintiff's Response: Not Contested.

36. The photos obtained from Twitter by GameSpot to accompany the Second Article bore no indicia indicating that they were anything other than studio publicity shots; they contained no copyright notices, watermarks or restrictions. Auty Decl. ¶ 4.

Plaintiff's Response: Disputed. There has been no admissible evidence that publicity shots differ from other photographs.

37. GameSpot's publication of Mr. Ferdman's Photo and Additional Photos had no effect whatsoever on Mr. Ferdman's market for his photos. Penchina Decl., Ex. 1 at 49:3-51:16, 82:17-84:14.

Plaintiff's Response: Disputed. Infringement of photographs at the time that the market for photographs is at its peak, by definition effects the market for the photographs. Ferdman Decl. ¶¶5, 6, 13, 14.

38. Mr. Ferdman lost no licensing opportunities as a result of GameSpot's publication of any of his photos. Penchina Decl., Ex. 1 at 49:25-50:7.

Plaintiff's Response: Disputed. Plaintiff may not be aware of specific lost licensing opportunities but that do not mean that no licensing fees were lost as a result of the infringement.

39. Other than the low license fee that CBS Interactive allegedly should have paid for its use of his photos, Mr. Ferdman testified that he could not identify any loss or "any other monetary damage that [he] suffered." Penchina Decl., Ex. 1 at 50:8-51:16.

Plaintiff's Response: Not Contested.

40. The primary markets for photos taken while a movie is in production are after the movie is released. Penchina Decl., Ex. 1 at 83:23-84:8.

Plaintiff's Response: Disputed. This is not admissible evidence from an expert witness on the primary market for photographs of a movie in production.

41. After this case was filed, Mr. Ferdman has sold "hundreds" of licenses for his photos at issue in this case. Penchina Decl., Ex. 1 at 82:8-83:9.

Plaintiff's Response: Not Contested.

42. Mr. Ferdman expects that, notwithstanding GameSpot's publications, the photos at issue in this case will continue to have a market and be good selling images for the rest of his life. Penchina Decl., Ex. 1 at 83:11-18.

Plaintiff's Response: Not Contested.

43. GameSpot believed in good faith that the Photo was available for it to use in connection with the First Article. Makuch Decl. ¶¶ 5, 6; Penchina Decl., Ex. 2 at 90:2-91:4; 120:18-20.

Plaintiff's Response: Disputed. Witness' deposition testimony indicates that the photograph was used without anyone checking whether it was available for use. No one checked if the Instagram account belonged to Tom Holland, much less if the photograph could be used. The witness testimony does not amount to believing in good faith that the photo was available.

44. GameSpot did not believe that its use of the Photo in connection with the First Article constituted an infringement of copyright. Makuch Decl. ¶¶ 5, 6; Penchina Decl., Ex. 2 at 90:2-91:4; 120:18-20.

Plaintiff's Response: Disputed. It is a conclusory statement based on a fact witness' deposition testimony as to what constitutes infringement. Testimony indicates that no legal counsel was sought to determine whether the photograph was infringing.

45. GameSpot believed in good faith that the Additional Photos were available for it to use with the Second Article. Auty Decl. ¶¶ 5, 6; Penchina Decl., Ex. 2 at 90:2-91:4.

Plaintiff's Response: Disputed. Witness' deposition testimony indicates that the photographs were used without anyone checking whether they were available for use. No one checked with respective Twitter users if the photographs could be used. The witness testimony does not amount to believing in good faith that the photos were available.

46. GameSpot did not believe that its use of the Additional Photos in connection with the Second Article constituted an infringement of copyright. Auty Decl. ¶¶ 5, 6; Penchina Decl., Ex. 2 at 90:2-91:4; *Id.*, Ex. 3 at 103:7-13.

Plaintiff's Response: Disputed. It is a conclusory statement based on a fact witness' deposition testimony as to what constitutes infringement. Testimony indicates that no legal counsel was sought to determine whether the photographs were infringing.

DATED: October 20, 2017

Valley Stream, NY

Respectfully Submitted,

/s/Richard Liebowitz
Richard P. Liebowitz
Yekaterina Tsyvkin
Liebowitz Law Firm
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516)233-1660
rl@liebowitzlawfirm.com

*Attorneys for Steven Ferdman*